**Lauren BOND, Plaintiff–Appellant,**

v.

**SOCIAL SECURITY ADMINISTRA-TION, COMMISSIONER, Kenneth S. Apfel, Defendant–Appellee.**

No. 00–6333.

United States Court of Appeals,
Second Circuit.

Sept. 27, 2001.

Lauren Bond, Newport, VT, pro se.

Christopher B. Baril, Assistant United States Attorney; David V. Kirby, United States Attorney, for the District of Vermont, Rutland, VT, for appellee.

Present Hon. JOHN M. WALKER, JR., Chief J., Hon. JON O. NEWMAN, Hon. GUIDO CALABRESI, Circuit Judges.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Plaintiff-appellant Lauren Bond appeals a September 5, 2000 judgment dismissing her action, which was brought under Titles II and XVI of the Social Security Act, *see* 42 U.S.C. §§ 405(g) and 1383(c)(3). In her complaint, Bond seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits and Supplemental Social Security Income

Bond contends that she suffers disabling pain, migraine headaches and visual deficits stemming from a mishap with the passenger doors of a bus she was entering.

She further contends that these symptoms prevent her from returning to her past employment as a secretary and as a freelance writer.

The ALJ denied Bond's request for benefits on the basis that she was capable of her past relevant work, despite her impairments. Specifically, the ALJ found that the "objective medical evidence" indicated that Bond could perform work involving the lifting and carrying of 20 pounds; sitting, standing, and walking up to 2 hours at a time; and occasional reaching, pushing, pulling and bending. In arriving at this conclusion, the ALJ did not give controlling weight to the opinion of Bond's treating physician, Dr. James Jealous, an osteopathic physician. Specifically, the ALJ did not afford controlling weight to Dr. Jealous's conclusion that Bond could not accomplish activities of daily living or perform work activity, and that any task of employment would require Bond to take an unreasonable number of rest periods.

The question presented on this appeal is whether the ALJ erred in not giving controlling weight to Dr. Jealous's diagnosis. Generally, the opinion of the treating physician is given controlling weight if the opinion is "(1) well supported by medically-acceptable clinical and laboratory diagnostic techniques *and* (2) is not inconsistent with other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2) (emphasis added). The ALJ asserted both bases for not affording Dr. Jealous diagnosis controlling weight.

We find no error in the ALJ's failure to give controlling weight to Dr. Jealous's opinion. As the district court noted in its September 5, 2000 opinion and order, there is "substantial evidence in the record that directly conflicts with Jealous's opinion" and this alone is sufficient to deny it controlling weight. A few examples of the various medical opinions are as follows:

A psychology intern, Michelle Macrorie, characterized Bond as engaging in "theatrical displays of exhaustion, pain and inability to function";

Dr. Sheldon Cooper suggested that "Lauren . . . [cut] treatments to once a week [and] increase her exercises at home—as well as seeking outside employment or volunteer work" and undergo "mental health counseling";

Dr. Karen Nepveu concluded that "Bond's symptoms did not meet the criteria for fibromyalgia" and that "Bond had signs and symptoms of myofascial pain syndrome involving the muscles of her back and . . . that exercise would be the key to ultimate improvement of this problem";

Dr. Butaney of the Spaulding Rehabilitation Hospital noted that "Bond's evaluation showed that she did not have any clear etiology for her symptoms" and recommended that she "stop wearing a cervical collar because it would weaken her muscles" and pressed Bond to increase her activity to condition herself;

Dr. A. Kenneth Ciongoli found "no specific abnormality" with Bond and stated that she was "totally against [taking] medication." Dr. Ciongoli also stated she suspected that Bond was exaggerating the pain due to "some psychological overlay";

Given the number of competing diagnoses, it simply cannot be said that the ALJ erred in declining to give controlling weight to Dr. Jealous's diagnosis, which was by far the most pessimistic one. Moreover, as the district court concluded, considering the competing diagnoses as a whole, there was substantial evidence for the ALJ to conclude that plaintiff Bond could continue to perform the secretarial work she had engaged in prior to the accident.

**22**

Accordingly, the district court's judgment dismissing the action in its entirety is hereby AFFIRMED.